IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 02-cv-02356-MSK-BNB

STEPHEN THENE SPARKS,

        Plaintiff,

v.

K. RITTENHOUSE,

        Defendant.
_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Appeal **(# 79)** of the Magistrate Judge's denial **(# 77)** of the Plaintiff's Motion for Appointment of Counsel **(# 74)**; the Plaintiff's Appeal **(# 105)** of the Magistrate Judge's denial **(# 102)** of the Plaintiff's Motion to Compel **(# 97)**; and the Defendant's Motion for Summary Judgment **(# 109)**, the Plaintiff's response **(# 119)**, and the Defendant's reply **(# 120)**.[1]

**FACTS**

In summary, the Plaintiff *pro se* is an inmate in the custody of the Colorado Department of Corrections. On or about March 8, 2001, the Plaintiff requested treatment from the prison's medical staff for pain in his right shoulder. Over a period of time thereafter, he received various

---

[1] Also pending are two petitions by the Plaintiff for writs of *habeas corpus ad testificandum* **(# 122, 123)**, seeking to secure the presence of witnesses at trial. Based on the ruling herein, these petitions are denied as moot.

examinations of his shoulder and was prescribed various treatments, none of which were completely successful.

On May 5, 2002, the Plaintiff was taken to Denver Health Medical Center and seen by an orthopedic specialist. At that time, bone fragments were diagnosed as the cause of the Plaintiff's shoulder pain, and the specialist indicated that surgery was appropriate. On June 14, 2002, Colorado Access, the Department of Corrections' health care administrator, wrote to the prison, *Docket* # 109, Ex. 2, stating that authorization of the Plaintiff's surgery was denied, on the grounds that the requested surgery was not medically necessary. The denial letter permitted an appeal to be filed within 60 days of receipt. However, although the letter was apparently received by the prison on or about June 26, 2002, Defendant Rittenhouse allegedly did not inform the Plaintiff of the denial letter until August 14, 2002, roughly 45 days into the 60-day appeal period.

On October 8, 2002, the Plaintiff filed a grievance, *Docket* # 109, Ex. 3, with the prison, complaining, among other things, that the Defendant Rittenhouse's failure to promptly provide him with Colorado Access' letter deprived him of an opportunity to file an appeal. Dr. Bloor, who has been identified as the chief physician at the prison, responded to the Plaintiff's grievance, advising the Plaintiff that: (i) Colorado Access had indicated that it would entertain an appeal of the denial despite such appeal being untimely, but (ii) it was the orthopedic specialist's decision whether to appeal, and the specialist had stated that it would not be appealing the denial. On October 15, 2002, the Plaintiff appealed Dr. Bloor's response to the grievance, *Docket* # 109, Ex. 4, again complaining of Defendant Rittenhouse's "mishandling and neglect of process to paperwork," and contending that the response by Dr. Bloor – that it is the duty of the specialist to appeal the denial – was contrary to representations made to the Plaintiff by the specialist and by

Colorado Access. The appeal was denied by an individual named Christopher Petrozzi, who repeated that "it is the specialty care provider's responsibility to appeal," a position that was repeated to the Plaintiff by Grievance Officer Edd Gillespie in response to a Step 3 appeal by the Plaintiff, *Docket* # 109 Ex. 5.

Eventually, the Plaintiff was transferred to another prison and, with the assistance of the medical staff there, was approved for and received surgery on his shoulder.

The Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Rittenhouse was deliberately indifferent to his medical needs in violation of the 8th Amendment. This Court originally dismissed the action for failure to state a claim. On appeal, *Sparks v. Rittenhouse*, 164 Fed.Appx. 712, 718-19 (10th Cir. 2006), the 10th Circuit reversed, finding that the Plaintiff stated a claim insofar as Defendant Rittenhouse's actions in failing to appeal the denial of surgery delayed his receipt of such treatment, causing him to experience considerable pain. "The gist of his contention," the 10th Circuit found, "is that [the Defendant] was the gatekeeper both to the orthopedic specialist and the insurance company, and her deliberate failure to fulfill that role was the cause of the delay in his receiving surgery."

Upon remand, the Plaintiff amended his complaint **(# 86)**, and now asserts two claims: (i) a claim for deliberate indifference to his medical needs in violation of the 8th Amendment; and (ii) a claim asserted under the 7th Amendment, which the Plaintiff explains simply be stating that the Defendant told him "People of the streets don't receive medical treatment as inmates do," and that "Because of the events of 9/11, inmates can't receive treatment due to budgetary issues," statements that the Plaintiff alleges are incorrect and represent "discriminatory acts against

3

prisoners." The Court assumes that this latter claim is actually an Equal Protection claim asserted under the 14th Amendment.

The Plaintiff moved for appointment of counsel **(# 74)**, but that request was denied by the Magistrate Judge **(# 77)**. The Plaintiff appeals **(# 79)** the Magistrate Judge's order to this Court pursuant to Fed. R. Civ. P. 72(a), arguing that the Magistrate Judge exhibited bias against the Plaintiff, based on the Magistrate Judge's observation that the Plaintiff's chances of success on the merits were "not strong."

Separately, the Plaintiff filed a Motion to Compel **(# 97)** production of six categories of documents. The Magistrate Judge granted **(# 102)** that motion in part as to one category of documents, and denied it in all other respects. The Plaintiff appeals **(# 105)** from that denial under Rule 72(a), but addresses his arguments only as to the Magistrate Judge's denial of the first category of documents he requested – namely, grievances filed by other prisoners against the Defendant. The Plaintiff states that the Defendant has an unfair financial advantage relative to him and that the Defendant failed to advise the Magistrate Judge that all grievances are stored in a computer database and are easily retrievable. In addition, the Plaintiff contends that the Magistrate Judge's decision was hasty, in that the decision was rendered prior to the expiration of the time granted to the Plaintiff to file a reply.

Defendant Rittenhouse moves for summary judgment **(# 109)** on both of the Plaintiff's claims, alleging that she is entitled to qualified immunity because the Plaintiff cannot establish the existence of a constitutional violation under either claim.

## ANALYSIS

### A. Standard of review

In evaluating all of the pending motions, the Court has construed the *pro se* Plaintiff's pleadings and filings liberally in conjunction with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Liberal construction requires the Court to overlook the Plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, *pro se* status does not relieve the Plaintiff of the duty to comply with the various procedural rules or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

As to the Plaintiff's appeal of non-dispositive rulings by the Magistrate Judge, this Court has jurisdiction to review the decision of a Magistrate Judge on a non-dispositive motion pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A). The Court must adopt the Magistrate Judge's ruling unless it finds that the ruling is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). In other words, the objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza*, 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988).

As to the Defendant's motion for summary judgment on the grounds of qualified immunity, once a defendant asserts a qualified immunity defense, the burden is on the plaintiff to establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran*, 339 F.3d 1205, 1211-12 (10th Cir. 2003).  If the facts, viewed in the light most favorable to the Plaintiff, could establish a violation of a constitutional right, the Court must then inquire as to whether the right was clearly established at the time.  *Id.*; *Reynolds v. Powell*, 370 F.3d 1028, 1030-31 (10th Cir. 2004).  When "the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Id.*  However, if the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  *Id.*  When qualified immunity is raised in the context of a motion for summary judgment, the Plaintiff may not simply rest on assertions of fact in his pleadings.  *Beherens v. Pelletier*, 516 U.S. 299, 309 (1996).  He must come forward with affidavits, admissions, exhibits, or such other evidence as would be sufficient to demonstrate a genuine issue of fact as to each element of each of his claims.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

### B. Appeal of denial of motion for appointment of counsel

Other than alleging bias on the part of the Magistrate Judge, the Plaintiff does not specifically point to anything contained in the Magistrate Judge's ruling that was allegedly clearly erroneous or contrary to law.  Rather, the bulk of the Plaintiff's argument simply re-presents the grounds upon which the Plaintiff believes that appointment of counsel is necessary.

The Plaintiff alleges that the Magistrate Judge's gratuitous speculation that the Plaintiff was unlikely to succeed reflected bias. The Court disagrees. Indeed, the Magistrate Judge is legally <u>obligated</u> to assess the likelihood of the Plaintiff succeeding. In deciding whether to appoint counsel, the Magistrate Judge is specifically required to consider a number of factors, including the nature of the factual issues raised in the claims, the litigant's ability to present their claims, the complexity of the legal issues raised by the claims, and <u>the merits of the litigants' claims</u>. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir.1995). Although the Plaintiff may disagree with the Magistrate Judge's conclusion that he was unlikely to succeed on the merits, the Court finds nothing in the Magistrate Judge's consideration of this factor, nor in the Magistrate Judge's conclusion that success was unlikely, that would reflect errors in law or fact.

Moreover, the Court cannot say that the Magistrate Judge's conclusion that appointment of counsel was not warranted requires reversal under Rule 72(a). Civil litigants are not constitutionally entitled to appointment of counsel to assist them in presenting a case, and the decision of whether to appoint *pro bono* counsel is confined to the sound discretion of the Court. *Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994). The Magistrate Judge evaluated each of the *Rucks* factors, finding that the factual and legal issues in the case are not complex, that the relative merits of the Plaintiff's claims are doubtful, and that the Plaintiff has been able to adequately present his claims in the Complaint. This Court finds that neither the Magistrate Judge's findings on each of these factors, nor the Magistrate Judge's weighing of these factors, was clearly erroneous or contrary to law. Accordingly, the Plaintiff's appeal is denied.

### C. Appeal of denial of motion to compel

The Plaintiff's Motion to Compel requested the Defendant produce six categories of documents: (i) all grievances filed against the Defendant during her employment with the Department of Corrections; (ii) all records of civil complaints against the Defendant relating to the practice of medicine; (iii) copies of documents referenced in the Defendant's responses to certain specified interrogatories; (iv) copies of any memoranda made by the Defendant with regard to the events at issue; (v) any witness statements obtained on the Defendant's behalf; and (vi) the "entire file" of any expert witness the Defendant intends to offer. The Magistrate Judge granted the Motion to Compel with regard to request no. 4 – memoranda made by the Defendant about the incident – but denied the motion in all other respects. The Magistrate Judge's Order did not specifically state the grounds upon which any of the requests other than no. 4 were denied. The Plaintiff's Objections to the Magistrate Judge's Order apparently relate only to request no. 1. The Plaintiff does not specifically allege that the Magistrate Judge's denial of any other request was improper.

Because the Magistrate Judge did not specify his reasoning in denying the Plaintiff's motion to compel production of the grievances, the Court examines only whether the conclusion that such documents were not discoverable was clearly erroneous or contrary to law. Defendant Rittenhouse raised two arguments in her response **(# 101)** to the Plaintiff's motion to compel as it related to prisoner grievances, contending: (i) that the database of grievances was not conveniently searchable by the person being grieved (as opposed to the name of the inmate filing the grievance), and (ii) that the grievance records were within the possession of the Department of Corrections, and not Defendant Rittenhouse in her personal capacity or as an employee of the

8

Department.  Even if the Court were to credit the Plaintiff's unsupported assertion that the Department of Corrections' database could easily be searched for grievances naming Defendant Rittenhouse, the Plaintiff has not come forward to show that Defendant Rittenhouse actually has access to the grievances against her, such that she could produce them.  It this regard, it is worth noting that the Plaintiff sues only Defendant Rittenhouse, not the Department of Corrections.  Absent a subpoena served on a third-party, the Plaintiff is limited to discovering only those documents that are in the possession or control of Defendant Rittenhouse.  Because there is no reason to believe that Defendant Rittenhouse has access to the Department of Corrections' database of inmate grievances, the Court cannot find that the Magistrate Judge's decision to deny the Plaintiff's motion to compel production of the grievances is clearly erroneous or contrary to law.

As to the Plaintiff's argument that he was not permitted to file a reply brief in support of his Motion to Compel, the Court notes that D.C. Colo. L. Civ. R. 7.1(C) provides that "Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed."  Other than his contention regarding the search ability of the grievance database, the Plaintiff has not articulated any additional evidence or argument he would have asserted in a reply had he been given the opportunity to file one.  Accordingly, the Court finds that the Magistrate Judge's decision to rule without awaiting a reply by the Plaintiff was not clearly erroneous or contrary to law.  The Plaintiff's appeal of the Magistrate Judge's ruling on this issue is denied.

**D. Summary judgment motion**

As stated above, once faced with a qualified immunity motion by Defendant Rittenhouse, the Plaintiff bears the burden of coming forward with evidence that, taken in the light most favorable to him, would establish a constitutional violation.

(i)  8th Amendment claim

To establish a claim for violation of his 8th Amendment rights due to the alleged denial of medical care in circumstances constituting "deliberate indifference," the Plaintiff must establish that (i) his medical needs were serious, and (ii) the Defendant was deliberately indifferent to those needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir.1996).  A medical need is serious if it has been diagnosed by a physician as requiring treatment, or is so obvious that a layperson could recognize the need for a doctor's attention. *Riddle*, 83 F.3d at 1202.  "Deliberate indifference" requires that the inmate demonstrate an official's actual awareness of a substantial risk of serious harm that goes ignored. *Farmer,* 511 U.S. at 835; *see Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("plaintiff must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it") (internal quotes omitted).  The inadvertent or even negligent failure to provide appropriate care does not arise to an Eighth Amendment violation. *Riddle*, 83 F.3d at 1203.

The Plaintiff's response to Defendant Rittenhouse's motion consists of a 10-page brief, and a number of attachments.  The response itself, which contains numerous factual assertions, is unsworn, and the Plaintiff has not otherwise attached an affidavit from himself attesting to these facts.  Moreover, the Plaintiff's response does not purport to assert that the factual allegations

10

contained therein are made under penalty of perjury, thus preventing the Court from deeming them to be the equivalent of an affidavit pursuant to 28 U.S.C. § 1746. Unsworn assertions are not sufficient grounds to oppose a motion for summary judgment. *Sofford v. Schindler Elevator Corp.*, 954 F.Supp. 1459, 1462-63 (D. Colo. 1997), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970). Thus, the Court cannot consider the factual assertions by the Plaintiff in his brief for purposes of determining whether he can establish a constitutional violation. On this ground alone, the Court could grant Defendant Rittenhouse's motion, as the exhibits submitted by the Plaintiff are insufficient, of themselves, to establish his claims. Nevertheless, in the interests of thoroughness, the Court will treat the Plaintiff's factual assertions in his brief as if they were sworn.

The Plaintiff appears to allege that the Defendant was deliberately indifferent to his medical needs in two respects: (i) that she "refused to adhere to Medical Doctors orders to administer pain medications;" and (ii) failed to follow protocols . . . to secure surgery." The Plaintiff's claim with regard to pain medication has already been rejected by the 10th Circuit, which found that "Although Mr. Sparks argues on appeal that Ms. Rittenhouse's failure to dispense anti-inflammatory medications to him was itself a violation of his Eighth Amendment rights, Mr. Sparks did not exhaust his administrative remedies with regard to such a claim through his prison grievances." 164 Fed.Appx. at 719 n. 3. Thus, the only question is whether he can show that the Defendant's failure to secure approval for his surgery amounts to a violation of the 8th Amendment.

It is apparently undisputed that the Plaintiff had a serious medical need. He was diagnosed by a physician with a shoulder impairment warranting surgery. This is sufficient to satisfy the first element.

The second element requires him to show that Defendant Rittenhouse was deliberately indifferent to his need for treatment for his shoulder when she failed to appeal the prison's insurer's denial of authorization for that surgery. Defendant Rittenhouse has taken the position that, under the prison's policies, an appeal from a denial of authorization for surgery must be made by the physician requesting the surgery, not by prison staff. In support of this contention, the Defendant attaches the affidavit of Deeanne Kahler, the Health Services Administrator for the Limon Correction Facility, who, in turn, attaches copies of the Colorado Department of Corrections' "Clinical Standard and Procedure for Health Care Providers" (hereinafter "Clinical Standard"). *Docket* # 109, Ex. 6. The Clinical Standard is of interest in two respects. First, it provides that the Department of Corrections considers a specialist's recommendation for medical treatment to be only a recommendation, and that any such recommendation must also be approved by a health care provider employed with the Department of Corrections. *Id.* at 6. If the Department of Corrections decides not to follow a recommendation by a provider, a Department of Corrections employee is required to make a notation as to the grounds for rejecting that recommendation on the inmate's health record. *Id.*

The second, and somewhat more interesting aspect of the Clinical Standard attached to Kahler's affidavit is a section of that standard that states that "If a referral [to a specialist for treatment] is denied" by Access Correctional Care, the prison's insurer, the reader is referred to Section D of the "Access Correctional Care Provider Manual," which is entitled "Appeal of

12

Denied Prior Authorization Request." *Id.* at 10.  Kahler's affidavit does not attach this document, and its contents are not found anywhere in the record.  The Plaintiff's response, however, includes copies of two sections of a policy manual that appears to be either the Access Correctional Care Provider Manual or some similar document, as these documents address the process by which authorization for inmate medical treatment may be sought and the appeals that may be filed if such authorization is denied.  *Docket* # 119 at 17-27.  The Plaintiff does not attach Section D, the section referenced in the Clinical Standard, but does attach portions of Section E, entitled "Provider Responsibilities," and Section F, entitled "Prior Authorization and Concurrent Review."

Section E identifies "Primary Care Providers"[2] or "PCPs" as being persons "employed . . . with the State to provide primary care services at each prison," and explains that PCPs include doctors, nurses, and physician's assistants.  *Id.* at 18.  By all indications, the Defendant would be a PCP under this definition.  The manual states that any PCP "can initiate PCP requests for prior authorization" of medical treatment, and that PCPs are responsible for, among other things, "participating in the prior authorization process."  The manual goes on to define "Specialty Care Providers" or "SCPs," who provide specialized medical treatment when authorized.  Section F explains this authorization procedure in detail.  As relevant herein, Section F includes a section entitled "Notification of Approval or Denial of Prior Authorization."  *Id.* at 24.  That section states that "the PCP, SCP, facility providing service," and others "will be notified in writing of denied services."  *Id.*

---

[2]Note that, in some places, PCPs are also referred to as "Primary Care Physicians." However, the manual clearly refers to PCPs as "providers" in several places, and clearly states that nurses, such as Defendant Rittenhouse, are considered PCPs.

13

The next portion of Section F is entitled "Clinical Appeal Process." The "first level appeal" states that "When a provider does not agree with the denial of a prior authorization, an appeal may be requested" in writing. *Id.* at 24. If that initial appeal is denied, "a provider may request a Level II appeal" from another official. Of critical importance is the fact that an appeal may be requested by "a provider," a label that is used elsewhere in the manual to refer to both specialists <u>and</u> primary care providers such as the Defendant. Nothing in the manual, or any other document in the record, endorses Defendant Rittenhouse's position that the only individual permitted to file such an appeal is the specialist.[3] Moreover, the Clinical Standard itself suggests just the opposite – that a specialist's decision that treatment is necessary is deemed by the Department of Corrections to be nothing more than a recommendation, subject to adoption or rejection by the chief physician at the prison. It would be entirely illogical to suggest that although the consent of the prison's chief physician is necessary before any specialized treatment can be provided, the prison medical staff lacks the authority to appeal a denial of authorization for such treatment. Thus, at a minimum, there is a genuine issue of fact as to whether the

---

[3]Nevertheless, in the particular circumstances presented here, the Defendant's position has some persuasive logic. The letter from Colorado Access indicates that authorization for surgery was denied because the surgery "do[es] not appear to be medically necessary," and that "clinical information fails to meet interqual [sic] criteria for the requested surgical procedure." *Docket #* 109, Ex. 2. Given that the prison medical staff felt it necessary to have the Plaintiff seen by an orthopedic specialist, one could reasonably assume that the specialist, not the prison medical staff, was in the best position to defend the medical necessity of surgery in an appeal. When the specialist refused to appeal the denial of authorization for surgery, the prison medical staff might reasonably have believed that the specialist agreed with Colorado Access that the surgery was not medically necessary, and that an appeal would be frivolous. Or, the prison medical staff might reasonably have believed that lacked the specialized expertise necessary to demonstrate the necessity of surgery on appeal without the specialist's help. Although the Court need not reach that issue, it has some doubt as to whether the prison medical staff's failure to file an appeal could constitute deliberate indifference once the specialist refused to participate in an appeal of the denial of authorization.

14

Department of Corrections' policies would permit the Defendant to file an appeal of the denial of authorization for the Plaintiff's surgery.

However, the mere fact that the Defendant is incorrect in her position that she lacked the power to appeal the denial of surgery does not suffice, of itself, to show that she engaged in conduct that was deliberately indifferent to the Plaintiff's medical needs. Having reviewed the entirety of the record, the Court finds that the Plaintiff has failed to come forward with evidence that, following the denial of authorization for the surgery, the Plaintiff clearly requested that <u>Defendant Rittenhouse</u> appeal the denial. The Court has carefully reviewed the entirety of the Plaintiff's brief, and finds no assertion therein that the Plaintiff ever spoke to Defendant Rittenhouse about appealing the denial of authorization.[4] Rather, it appears that the Plaintiff's next step was to file his grievance, which, notably, complained of Defendant Rittenhouse's delay in notifying him of the denial, thereby depriving him of the opportunity to appeal. That grievance was responded to not by Defendant Rittenhouse, but by Dr. Bloor. Indeed, there is no evidence in the record that Defendant Rittenhouse was made aware of any of the Plaintiff's grievances prior to this litigation. No reasonable factfinder could find Defendant Rittenhouse was deliberately indifferent to the Plaintiff's medical needs by failing to file an appeal where the Plaintiff never affirmatively requested that she do so.

---

[4]Defendant Rittenhouse has submitted her own affidavit, *Docket* # 109, Ex. 1 that details the contacts she had with the Plaintiff after authorization for surgery was denied. Specifically, she arranged for the Plaintiff to have a follow-up examination by the specialist; and in October 2002, she inquired of the specialist whether he would be appealing the denial of authorization, and, upon being informed that the specialist was not willing to file an appeal, she related that information to the Plaintiff. The affidavit does not recite any facts relating to when she received the denial letter, any discussions she may or may not have had with the Plaintiff about filing an appeal, or her participation or lack thereof in the hearing of the Plaintiff's grievances.

15

The Plaintiff also argues that Defendant Rittenhouse's tardiness in advising him of Colorado Access' denial of authorization for the surgery constitutes deliberate indifference to his medical needs. Arguably, if accompanied by the requisite intent, Defendant Rittenhouse's failure to promptly notify the Plaintiff of the denial could be said to have prolonged the period in which the Plaintiff would have to wait for treatment. A delay in providing treatment can constitute an 8th Amendment violation if the Plaintiff can show that the delay caused him substantial harm, such as physical injury or significant and prolonged pain. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). Nevertheless, the Court finds that any claim based on Defendant Rittenhouse's delay in providing the denial letter fails on the facts presented by the Plaintiff.

First, and perhaps most notably, the record offers no facts to even indicate that the delay in notifying the Plaintiff of the denial is attributable to Defendant Rittenhouse. The letter from Colorado Access is addressed to the Limon Correctional Facility, and copied to Denver Health and Hospitals, Jennifer Allison (twice), the Colorado Department of Corrections, and an entity called "ACC." Defendant Rittenhouse is not listed as a recipient of the letter, and thus, there can be no automatic presumption that she received it, much less that she received it at any particular time prior to July 26, 2002, when she apparently delivered it to the Plaintiff.[5] The Court has carefully reviewed the Plaintiff's brief and exhibits, and although the Plaintiff appears to believe that Defendant Rittenhouse received the letter on or about June 26, 2002, he cites only to the letter itself as proof of this contention, not to any testimony by Defendant Rittenhouse or any

---

[5]The Court notes that the copy of the letter in the record bears a "Received" stamp dated June 26, 2002, but no indication of who received it at that time. There is a handwritten notation below the stamp that reads "07/26/02" and bears a signature that is similar to that on Defendant Rittenhouse's affidavit, but that notation would, at best, establish Defendant Rittenhouse's receipt of the letter on the same day she delivered it to the Plaintiff.

16

other individual. Indeed, beyond the letter itself, the only evidence in the record even arguably relating to this issue is a hearsay statement by the Plaintiff in his grievance, stating that "Ms. Rittenhouse has verbally admitted that my paper work as others have 'slipped through the cracks' on timely process, wherefore denying this petitioner a response to file for appeal to the denial of medical treatment." *Docket* # 109, Ex. 3. Even assuming that the Plaintiff could testify as to the statement he attributes to Defendant Rittenhouse, and even viewing that testimony in the light most favorable to the Plaintiff, Defendant Rittenhouse's comment that the paperwork "slipped through the cracks" does not constitute evidence that it was Defendant Rittenhouse who allowed the letter to "slip through the cracks." Without any evidence that Defendant Rittenhouse was even aware of the letter prior to July 26, 2002, the Plaintiff cannot show that she was deliberately indifferent to his medical needs by delaying the delivery of that letter to him.

Moreover, even assuming that Defendant Rittenhouse delayed delivery of the letter – and that the Plaintiff's allegations as to disparaging comments by Defendant Rittenhouse suffice to demonstrate the requisite intent – there is no evidence in the record to establish that earlier delivery of the letter would have prevented the Plaintiff from suffering additional pain. The letter denied authorization for surgery, and thus, the promptness of delivery of the letter to the Plaintiff bears only on how quickly the Plaintiff could have appealed that denial. To suggest that a more timely delivery of the letter would have saved the Plaintiff from suffering additional pain requires acceptance of a long chain of suppositions – that a more prompt delivery of the letter would have resulted in the prompt filing of an appeal; that such an appeal would have been successful; that, once the appeal succeeded, surgery could be promptly scheduled, etc. – for which there is no evidence in the record. Indeed, the record is to the contrary. There is no evidence in the record

that the Plaintiff, once he actually learned of the denial, requested that an appeal be filed within the remaining appeal period. Rather, he waited nearly three months before filing a grievance over the issue, and then, once advised that Colorado Access would nevertheless entertain an untimely appeal, he still failed to file any appeal on his own behalf nor ever clearly requested that prison medical staff file such an appeal for him. Thus, even if the Court were to find that Defendant Rittenhouse purposefully delayed delivering the denial letter to the Plaintiff, the record does not indicate that such delay was the proximate cause of additional suffering experienced by the Plaintiff.

Accordingly, the Court finds that, on the record before it, the Plaintiff cannot establish an 8th Amendment claim against Defendant Rittenhouse, and she is therefore entitled to qualified immunity on this claim.

(ii) 14th Amendment violation

Defendant Rittenhouse also contends that the Plaintiff cannot establish a 14th Amendment violation as alleged by the Plaintiff's second claim, and also contends that such a claim was not exhausted by the Plaintiff pursuant to 42 U.S.C. § 1997e(a). The Plaintiff has not clearly responded to either argument, nor has he articulated the factual and legal basis of this claim with any meaningful degree of detail. At best, the Plaintiff offers affidavits from other inmates that Defendant Rittenhouse has also been rude to them. Apparently, then, the Plaintiff is alleging that his rights to Equal Protection have been violated, in that the Defendant discriminated against him because he is an inmate.

Exhaustion of remedies under § 1997e is an affirmative defense, *Jones v. Bock*, 127 S.Ct. 910, 921 (2007), but once the defense is raised by a defendant, the burden logically shifts to the

Plaintiff to show that he exhausted the prison's grievance procedure with regard to this issue. The Court has reviewed the grievances in the record that were filed by the Plaintiff with regard to the Defendant, but these grievances do not allege that the Defendant has discriminated against him or others because of their status as inmates, nor otherwise given any reasonable notice of the Equal Protection claim he now appears to assert. The Plaintiff has not pointed to any other grievances he has filed that are allegedly sufficient to exhaust this claim, and thus, the Court finds that the Defendant is entitled to summary judgment on this claim as being unexhausted.

Even if the Court were to find the claim to be exhausted, the Plaintiff has nevertheless failed to show that he can establish a *prima facie* constitutional violation. Because he alleges discrimination against "inmates" generally, not against any suspect classification, *see e.g. City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985) (recognizing race, alienage, national origin, and gender as suspect classifications, along with decisions that implicate fundamental constitutional rights), he must prove that the distinction made by the Defendant between inmates and others when it came to health care decisions was not reasonably related to some legitimate penological purpose. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

Absent a clear articulation of this claim by the Plaintiff, it is difficult for the Court to conceive of what act or acts allegedly give rise to the claim. The Plaintiff appears to assert that Defendant Rittenhouse made comments indicating her belief that prisoners receive inferior medical care than non-prisoners, and that budget cuts following the events of September 11, 2001 exacerbate that disparity. Of course, statements of opinion by the Defendant do not constitute an Equal Protection violation. Of the various acts that the Plaintiff appears to attribute to Defendant Rittenhouse – refusing to give him medications, failing to promptly notify him of Colorado

19

Access' decision, failing to file an appeal on his behalf – the foregoing discussion indicates that the Plaintiff has either failed to exhaust his claims with regard to these actions, or failed to come forward with evidence to establish Defendant Rittenhouse's personal participation in them. Accordingly, the Court finds that cannot establish any 14th Amendment violation on the facts in the record, and Defendant Rittenhouse is entitled to qualified immunity on this claim as well.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's Appeal **(# 79)** of the Magistrate Judge's denial **(# 77)** of the Plaintiff's Motion for Appointment of Counsel **(# 74)** is **DENIED**, and the Magistrate Judge's ruling is **AFFIRMED**. The Plaintiff's Appeal **(# 105)** of the Magistrate Judge's denial **(# 102)** of the Plaintiff's Motion to Compel **(# 97)** is **DENIED**, and the Magistrate Judge's ruling is **AFFIRMED**. The Defendant's Motion for Summary Judgment **(# 109)** is **GRANTED** in its entirety. The Plaintiff's Petitions for Writs of *Habeas Corpus Ad Testificandum* **(# 122, 123)** are **DENIED AS MOOT**. Judgment shall enter in favor of the Defendant.

Dated this 29th day of March, 2007

                                                     **BY THE COURT:**

                                                   Marcia S. Krieger
                                                   United States District Judge